Filed 10/27/15  P. v. Rodriguez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C078013 |
| Plaintiff and Respondent, | (Super. Ct. No. NCR75266, NCR81681) |
| v. | |
| ADRIAN RODRIGUEZ, | |
| Defendant and Appellant. | |

Defendant Adrian Rodriguez contends the trial court abused its discretion by imposing a state prison sentence instead of reinstating probation.  Defendant also claims he is entitled to additional days of presentence custody credits.  We shall remand for recalculation of defendant's custody credits and otherwise affirm.

## I.  BACKGROUND

In June 2011, in case No. NCR75266, an information was filed charging defendant with battery resulting in serious bodily injury (count 1—Pen. Code, § 243, subd. (d))[1] and

---

[1]  Undesignated statutory references are to the Penal Code.

1

assault by means of force likely to produce great bodily injury (count 2—§ 245, subd. (a)(1)), on or about October 2, 2008. The information also alleged that defendant had suffered two prior strikes. (§ 667, subds. (b)-(i).)

At the same time, in case No. NCR81681, an information was filed charging defendant with failure to appear on or about October 27, 2008, while released on bail (§ 1320.5), and alleging that at the time of the commission of the charged crime, defendant was released from custody on bail in case No. NCR75266 (§ 12022.1). The information also alleged two prior strikes.

In December 2012, defendant entered into plea agreements in both cases. In case No. NCR75266, defendant pleaded no contest to count 2 as a nonstrike violation of section 245, subdivision (a)(1), and admitted one prior strike. In case No. NCR81681, defendant pleaded no contest to failure to appear, admitted the on-bail allegation, and admitted one prior strike. In return, defendant was promised a suspended 11 year four month sentence in state prison, a grant of three years' probation with 365 "additional" days in county jail, and the dismissal of all other counts and allegations, including three other pending cases.[2]

In January 2013, the trial court sentenced defendant in accordance with the plea agreement. In case No. NCR75266, the court pronounced a four-year sentence on

---

[2] As the supplemental probation report filed in September 2014 pointed out, defendant's admitted strike rendered him statutorily ineligible for probation. (§ 667, subd. (c)(2); *People v. Superior Court (Roam)* (1999) 69 Cal.App.4th 1220, 1228; see also *People v. Johnson* (1999) 70 Cal.App.4th 1429, 1432 & fn. 4; *People v. Llamas* (1998) 67 Cal.App.4th 35, 39.) The probation report prepared for defendant's original sentencing, after he had entered into the plea agreement, did not mention that fact, and the trial court and the parties did not discuss it on the record at the time of the original sentencing or at any later stage of the proceedings below. While we question whether the trial court could condition a grant of probation on defendant's admission of a strike, the parties do not address this point on appeal.

count 2, doubled for the strike. In case No. NCR81681, the court pronounced a consecutive eight-month term for failure to appear, doubled for the strike, plus two years for the on-bail enhancement; totaling 11 years four months in state prison for both cases. The court then suspended imposition of this sentence and placed defendant on formal probation for three years in both cases, plus 365 days in county jail in case No. NCR75266.

In August 2013, a petition to revoke defendant's probation was filed, alleging defendant had battered his wife and endangered his children. In November 2013, defendant admitted the probation violation.[3] The trial court revoked and reinstated defendant's probation, adding the conditions that defendant serve one year in county jail with credits for time served and complete a domestic violence program.

In July 2014, a second petition to revoke defendant's probation was filed, alleging that defendant had tested positive for methamphetamine. In August 2014, defendant admitted the violation; the trial court referred the matter to the probation department for a supplemental report as to both cases.

The supplemental probation report, filed September 10, 2014, recommended imposing the previously stayed prison commitments. The report stated that defendant's

---

[3] The factual basis for defendant's admission, according to his counsel, was that "[o]n August 13th, [2013,] my client was involved with his wife in babysitting the children that they have in common. When she was leaving, he wanted to talk to her further and he held her by the hand or by the arm when she was trying to leave the residence where they were. [¶] After some period of time passed, she was in a car, he wanted to talk to her further and he pulled his car in a position in front of her car, and as a result, she had to stop and get out of the car so they could have a discussion. [¶] We don't believe that— there were not children in the car. There was one child in the car and we dispute that that child was endangered in any way. It was on a local street approaching a stop sign; however, it was not the legal way to stop and it was not being a good citizen." Asked for comment, the prosecutor replied: "With the addition that there would have been testimony that during the argument at his mother's house that he did push his wife. It would have been in dispute, there would have been evidence to that effect."

3

admitted strike made him statutorily ineligible for probation, that he had a long history of violence, and that he had shown himself to be a danger to the community.

According to the report, in case No. NCR75266, defendant approached the victim outside a convenience store on October 2, 2008, suddenly punched him in the face, knocking him to the ground, then repeatedly punched and kicked the victim's face while he was on the ground. After defendant drove away, the victim reported the assault to an officer. His three top teeth were loose and bleeding, it appeared he had bitten through his upper lip, his face was swollen, and he suffered abrasions on his cheek and forehead.

Defendant told law enforcement that his sister had been raped several months earlier. While at the store on October 2, he heard someone ask, "How's your sister?" When defendant looked up, he saw it was the alleged rapist. He "snapped."

In case No. NCR81681, defendant failed to appear in court on October 27, 2008, while released on bail on the felony charged in case No. NCR75266.

The probation report also provided that in 2003, as a juvenile, defendant had been convicted of two felony counts of assault with a deadly weapon. And in October 2008, about a week after being released on bail in case No. NCR75266, he was again convicted of assault with a deadly weapon. According to defendant, he assaulted one of his employees, whom he believed was being disrespectful to defendant's sister. Defendant then fled to Mexico for three years. On November 8, 2011, he was sentenced to "[f]our years [in] prison, served locally." On July 10, 2012, he was released on mandatory supervision. (§ 1170, subd. (h)(5).)

On August 13, 2013, while on probation in the subject cases, defendant committed a battery on his estranged wife and endangered his infant by driving erratically (the first probation violation). He was required to complete a domestic violence program as a condition of his reinstated probation. Thereafter, he failed to submit monthly written reports as directed. On June 16, 2014, he was admonished for trespassing at his estranged wife's workplace and for making 30 phone calls a day to her. On June 18,

4

2014, he tested positive for methamphetamine, the basis of his current revocation of probation. On July 7, 2014, defendant failed to report to the probation office as directed. He then failed to appear for his revocation hearing on July 21, 2014, and was arrested on the warrant on July 30, 2014.

Defendant stated that he relapsed on methamphetamine on June 15, 2014, after 10 months of abstention because; it was Father's Day and he missed his children, he was overwhelmed by his father's deportation, his parents' separation, his mother dating another man, and the dissolution of his own marriage. He smoked methamphetamine once a week for the next six weeks afterward, but timed his use to avoid detection at the probation department. He started using the drug at age 16. His prior violation on mandatory supervision was for a positive methamphetamine test. He hoped to be reinstated on probation and was willing to attend a residential substance abuse treatment program. According to the report, the criteria weighing against probation (Cal. Rules of Court, rule 4.414)[4] included the following: The circumstances of the offense in case No. NCR75266 differed somewhat from other instances of the same crime, in that defendant "essentially blind-sided the victim"; and in case No. NCR81681, defendant said he fled to Mexico for three years. (Rule 4.414(a)(1).) Defendant caused physical injury in case No. NCR75266. (Rule 4.414(a)(4).) The crimes were not committed because of unusual circumstances. (Rule 4.414(a)(7).) Defendant was developing a pattern of regular criminal conduct. (Rule 4.414(b)(1).) Defendant's previous performance on mandatory supervision was poor. (Rule 4.414(b)(2).) Defendant had a history of violence, along with the current offense, and posed an immediate physical danger to others if not imprisoned. (Rule 4.414(b)(8).)

---

[4] Further rule references are to the California Rules of Court.

Criteria weighing in favor of probation included the following: Defendant was not armed. (Rule 4.414(a)(2).) The victim was not particularly vulnerable. (Rule 4.414(a)(3).) Defendant did not demonstrate criminal sophistication (rule 4.414(a)(8)), or take advantage of a position of trust (rule 4.414(a)(9)). Defendant said he would comply with the terms of probation (rule 4.414(b)(3)), and his age, education, health, and other listed factors did not argue against his ability to do so (rule 4.414(b)(4)). Defendant had dependents who might be affected by his imprisonment. (Rule 4.414(b)(5).)

The report noted, as circumstances in aggravation, that defendant had served a prior prison term (rule 4.421(b)(3)) and his prior performance on mandatory supervision was unsatisfactory (rule 4.421 (b)(5)). The report noted no circumstances in mitigation.

On October 14, 2014, defendant filed letters about residential drug treatment programs he hoped to enter. Sacramento Valley Teen Challenge stated that defendant had submitted an application and completed a jail assessment, and was now "actively on [their] waiting list to enter the program." The Salvation Army's Adult Rehabilitation Center in Oakland stated that it had a bed available for defendant immediately.

Defendant also submitted a letter to the trial court in which he claimed that he had sought employment after his release from incarceration, but could not find work in trucking, his previous field of employment, because his probation officer would not allow him to do so (supposedly because it would require overnight stays). Along with the crises in his personal life and his parents' lives, probation's "harassing" him and "denying him the opportunity to self improve" had led to his relapse.

After receiving the supplemental report and defendant's submissions, the trial court conducted a sentencing hearing on October 14, 2014. The court noted that it had read and considered the information presented that day by defendant, as well as the supplemental probation report. The prosecutor pointed out that when defendant was granted probation, the trial court made clear that he was "on an extremely short leash."

6

The trial court declined to reinstate defendant's probation and imposed the previously suspended state prison sentence. The court stated: "Mr. Rodriguez, you were given a break by Judge Garaventa up front on the original case. Quite frankly, I think you could consider yourself lucky for not going to state prison initially. And then you were given a break with the new case and a previous probation violation and here you are now saying that you want to address some of the issues that apparently brought you before the court initially and then repeatedly regarding drug addiction and whatnot. But what really, I find amazing, Mr. Rodriguez, is that in your attempt to be apologetic for your actions, you actually state that probation was harassing you and somehow make it probation's fault that you weren't able to stay on the straight and narrow and I just find that to be yet another incident here, sir, unfortunately, of you not being accountable for your actions. I don't find that you are suitable for probation any longer. Probation is going to be denied."

## II. DISCUSSION

*A. The Decision Not to Reinstate Probation*

Defendant contends the trial court abused its discretion by not reinstating probation with the requirement that he enter a drug rehabilitation program. We disagree.

We review the trial court's decision whether to reinstate probation for abuse of discretion, and will not interfere with the court's exercise of discretion if the court has considered all facts bearing on the offense and the offender and has not acted arbitrarily or capriciously. (*People v. Downey* (2000) 82 Cal.App.4th 899, 909-910; *People v. Zaring* (1992) 8 Cal.App.4th 362, 378.) Here, the court spelled out grounds for declining to reinstate probation, which included defendant's repeated violations, his failure up to now to seek treatment for his long-standing drug addiction, and his continuing habit of blaming others for his own failures rather than taking responsibility for his actions.

Defendant's previous failures to comply with his terms of probation could alone suffice to justify the trial court's decision. (*People v. Jones* (1990) 224 Cal.App.3d 1309,

1316.)  The court did not have to take defendant's last-minute attempts to find a residential drug treatment program as evidence of a true change of heart.  He admitted he had recently used methamphetamine far more often than the single occasion on which he tested positive and had carefully scheduled his use to avoid detection as far as possible. That fact, together with defendant's attempt to shift the blame for his failures onto the probation department, suggested that he was unlikely to make a sincere and sustained effort to complete any drug treatment program.

In addition, the trial court presumably considered the other negative factors discussed in the supplemental probation report:  defendant's history of violence, his harassing behavior toward his estranged wife, and his repeated pattern of fleeing rather than making court appearances.  Given all of these factors, we cannot say the court acted arbitrarily or capriciously by refusing to reinstate defendant on probation yet again.

Defendant seeks to minimize the seriousness of his probation violations.  He asserts that his first violation, for domestic violence, "stemmed from the normal difficulties associated with his on-going divorce proceedings," and that his second violation, for using methamphetamine, merely "demonstrates the perniciousness of this drug."  He also repeats the excuses he made below about "the many stressors in his life"—that is, he continues to blame external circumstances for his multiple lapses.  He points out that no one was hurt on either occasion when he violated probation.  Finally, he notes that he has no history of involvement in a gang, has completed high school, and "seems to have on-going employment including as a truck driver."  These points are not sufficient to demonstrate an abuse of discretion by the trial court.

As the trial court noted, defendant was given a break by receiving probation in the first place.[5]  He was given a further break by getting his probation reinstated after his first

---

[5]  The trial court understated the extent of that "break."

8

violation.  Despite these additional opportunities to stay out of prison, he reverted to methamphetamine use, not once but multiple times.  At no time did he show any signs of taking probation seriously and making a good faith effort to comply.  We also note that committing domestic violence is not "normal" even in the context of divorce proceedings, and that defendant never made any apparent effort to combat the "perniciousness" of methamphetamine until he was facing the consequences of his second admitted probation violation.  Lastly, the fact that defendant has succeeded at some things in his life, and the fact that he did not hurt anyone while committing domestic violence and abusing drugs, does not demonstrate that the court abused its discretion by refusing to reinstate defendant on probation.

Defendant urges us to consider the "sea change in California law regarding drug possession of [*sic*] use," as shown by the electorate's enactment of Propositions 36 and 47.  That point is not persuasive in this context.  As a person who has committed multiple non-drug-related offenses and repeatedly violated probation, defendant is not similarly situated to the offenders sentenced under those programs.

Defendant has not shown any abuse of discretion in the trial court's sentencing decision.

*B.  Custody Credits*

Defendant contends he is entitled to additional presentence custody credits.  The Attorney General concedes that on this record it cannot be determined whether defendant has received the credits he is entitled to.  We shall remand for recalculation of defendant's presentence custody credits.

At sentencing on October 14, 2014, the trial court awarded defendant 272 days of presentence custody credits, consisting of 136 actual days and 136 conduct days.  Before making that award, the court noted that the credits proposed in the supplemental probation report (213 days as of September 15, 2014, consisting of 107 actual days and 106 conduct days, all allocated to case No. NCR75266) needed to be updated, since a

9

month had elapsed since that calculation was done. However, it does not appear from the record whether defendant served the "additional 365 days" the trial court ordered as part of his original grant of probation on January 8, 2013, or any part of that time. The supplemental probation report indicates that after defendant's release on that date, he was arrested again on September 16, 2013, for his first probation violation, and accordingly assigns no credits for the period of January 8, 2013, to September 16, 2013. On this record we cannot determine whether the court's calculation takes into account the time in custody, if any, defendant spent between January 8, 2013, and his detention on his first violation of probation. The matter must be remanded for further proceedings as to presentence custody credits.

## III. DISPOSITION

The order imposing defendant's previously suspended prison sentence is affirmed. The matter is remanded to the trial court with directions to ascertain how many additional days of presentence custody credits, if any, defendant is entitled to. If defendant is awarded additional credits, the court is directed to prepare an amended abstract of judgment reflecting the correct number of credits and to forward a certified copy thereof to the Department of Corrections and Rehabilitation.

/S/

_____,
RENNER, J.

We concur:

/S/

_____
BUTZ, Acting P. J.

/S/

_____
MAURO, J.

10